AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Dakota

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>USA v. 23-231-05 | )<br>)<br>)   Case No.   5:23-mj-243<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Western _____ District of _____ South Dakota _____ *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A, attached hereto and incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crime of Enticement of a Minor Using the Internet, in violation of 18 U.S.C. § 2422(b), as described in ATTACHMENT B, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   12/13/23   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Daneta Wollmann   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   11/30/23 at 3:40pm                     _____
                                                                                      *Judge's signature*

City and state:        Rapid City, South Dakota              Daneta Wollmann, U.S. Magistrate Judge
                                                                              *Printed name and title*

cc: AUSA Collins
kle

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>5:23-mj-243 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|
|     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of South Dakota

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.    5:23-mj-243 |
| **USA v. 23-231-05** | ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE "ATTACHMENT A", which is attached to and incorporated in this Application and Affidavit.

located in the _____ **Western** _____ District of _____ **South Dakota** _____ , there is now concealed *(identify the person or describe the property to be seized):*

SEE "ATTACHMENT B ", which is attached to and incorporated in this Application and Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Attempted Enticement of a Minor Using the Internet |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sarah B. Collins, AUSA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   **11/30/23**

_____
*Judge's signature*

City and state: _____ **Rapid City, SD** _____

Daneta Wollmann, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

IN THE MATTER OF THE SEIZURE
AND SEARCH OF:

USA v. 23-231-05

CASE NUMBER:     5:23-mj-243

**AFFIDAVIT IN SUPPORT OF
SEARCH WARRANT
APPLICATION**

State of South Dakota     )
                          ) ss
County of Pennington      )

I, Detective Matthew Almeida, Rapid City Police Department, currently
assigned to the Internet Crimes Against Children Taskforce (ICAC), being duly
sworn, states as follows:

1.      I earned an Associates Degreed from Western Dakota Tech in Law
Enforcement Sciences in 2011.  I have been employed as a law enforcement
officer in the State of South Dakota since October of 2011.  I have advanced
certifications in Crisis Intervention, Advanced Roadside Impaired Driving
Enforcement (ARIDE), I am a Drug Recognition Expert, I have advance training
in Advanced Accident Investigation and Mapping, and I am a Police Training
Officer.  I attended the 2019 National School Resource Officer Conference.
During the weeklong conference, I attended multiple classes involving drug and
cyber trends.  I have been a Traffic Officer, Patrol Officer, Police Training Officer,
member of the Western South Dakota Fugitive Task Force with the US Marshals,
School Resource Officer and Temporary Detective. As a School Resource Officer,

I investigate all kinds of Juvenile Crimes. The main crimes include Assaults, Thefts, Vandalism, Harassment, School Threats and Missing/ Runaway youth.

2.     During my law enforcement career, I have been involved in the investigation of cases involving the possession, receipt, and distribution of child pornography in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have become familiar with the *modus operandi* of persons involved in the illegal production, distribution and possession of child pornography. Based on my experience, training, and discussions with other members of law enforcement, I am knowledgeable of the various means utilized by individuals who illegally produce, distribute, receive and possess child pornography.     During     my     law enforcement career, I have become familiar with the *modus operandi* of persons involved in attempted commercial sex trafficking of a minor, in violation of federal law. Based on my experience and training, I am knowledgeable of the various means utilized by individuals who illegally attempt to meet with children in order to engage in criminal sex acts.

3.     The information set forth below is based upon my knowledge of an investigation conducted by the South Dakota Internet Crimes Against Children Taskforce (ICAC) and the investigation of other law enforcement agents and officers including, but not limited to, South Dakota Division of Criminal Investigation (DCI), Homeland Security Investigations (HSI), the Rapid City Police Department, and the Pennington County Sheriff's Office. I have not included every fact obtained pursuant to this investigation but have set forth those facts that I believe are essential to establish the necessary probable cause for the

2

search warrant. I have not omitted any material fact relevant to the consideration of probable cause for a search warrant against the herein named defendant.

4.      I have been informed that 18 U.S.C. § 2422(b) makes it a crime for a person to knowingly attempt to engage in an unlawful sex act with a person who has not attained the age of 18. Your affiant respectfully submits that there is probable cause to believe that Vincent Alberto Barrios committed the crime of attempted enticement of a minor using the internet in violation of 18 U.S.C. § 2422(b) and utilized the SUBJECT DEVICE to commit the crime.

<u>ITEMS TO BE SEARCHED FOR AND SEIZED</u>:

5.      The undersigned respectfully requests that a search warrant be issued to permit a search of the content of one cellular phone, belonging to Vincent Alberto Barrios seized from him upon his August 6, 2023 arrest, further described as one Samsung, black in color, model SM-S901U, serial number R5CT62MG4AE (the "Subject Device"). The phone was previously searched via warrant, but additional content is necessary. The phone has remained in secure custody of law enforcement since it was seized.

6.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

7.      The warrant is sought in order to search for contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2422(b), enticement of a minor using the internet.

3

DEFINITIONS

8.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     *Chat*: as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.     *Child Erotica*: as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

c.     *Child pornography*: as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

d.     *Cloud-based storage service*: as used herein, refers to a publically accessible, online storage provider that collectors of child

4

pornography can use to store and trade child pornography in larger volumes. Users of such a service can share links and associated passwords to their stored files with other traders of child pornography in order to grant access to their collections. Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop and laptop computers, mobile phones, and tablets, anywhere and at any time. An individual with the password to file stored on a cloud-based service does not need to be a user of the service to access the file. Access is free and readily available to anyone who has an internet connection.

e.   *Computer:* The term "computer" means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. §§ 2256(6) and 1030(e)(1). As used herein, a computer includes a cell phone, smart phone, tablet, and other similar devices capable of accessing the Internet.

f.   *Computer Hardware:* The term "computer hardware" means all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard

5

drives, floppy disk drives and diskettes, and other memory storage devices such as video gaming systems, electronic music playing devices, and mobile phones); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, modems, routers, scanners and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

g.      *Computer-related documentation*: as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

h.      *Computer Passwords and Data Security Devices:* The term "computer passwords and data security devices" means information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or

"booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

      i.    *Computer-Related Documentation:* The term "computer-related documentation" means written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

      j.    *Computer Software:* The term "computer software" means digital information which can be interpreted by a computer and any of its related components to direct the way they work.  Computer software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

      k.    *Electronic Communication Service* ("ESP"): as defined in 18 U.S.C. § 2510(15), is a provider of any service that gives to users thereof the ability to send or receive wire or electronic communications.  For example, "telephone companies and electronic mail companies" generally act as providers of electronic communication services.  *See* S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568.

      l.    *Electronic Storage Device*: includes but is not limited to external and internal hard drives, thumb drives, flash drives, SD cards, gaming devices with storage capability, storage discs (CDs and DVDs), cameras, cellular phones, smart phones and phones with photo-taking and/or internet access capabilities, and any "cloud" storage by any provider.

m.   *File Transfer Protocol* ("FTP"): as used herein, is a standard network protocol used to transfer computer files from one host to another over a computer network, such as the Internet.   FTP is built on client-server architecture and uses separate control and data connections between the client and the server.

n.   *Internet:* The "Internet" is a global network of computers and other electronic devices that communicate with each other.   Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

o.   *Internet Connection:* The term "Internet connection" means a connection required for access to the Internet.   The connection would generally be provided by cable, DSL (Digital Subscriber Line), wireless devices, or satellite systems.

p.   *Minor:* The term "minor" means any person under the age of eighteen years.   *See* 18 U.S.C. § 2256(1).

q.   *Records, documents, and materials*: as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

r.   *Remote Computing Service* ("RCS"): as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

s.   *Short Message Service* ("SMS"): as used herein, is a service used to send text messages to mobile phones.  SMS is also often referred to as texting, sending text messages or text messaging.  The service allows for short text messages to be sent from one cell phone to another cell phone or from the Web to another cell phone.  The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

t.   *Storage Medium:* The term "storage medium" refers to any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

u.   *Visual Depictions:* "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  *See* 18 U.S.C. § 2256(5).

v.   *Wireless Network:* The term "wireless network" means a system of wireless communications in which signals are sent and received via electromagnetic waves such as radio waves.  Each person wanting to connect to a wireless network needs a computer, which has a wireless network card that operates on the same frequency.  Many wired networks

9

base the security of the network on physical access control, trusting all the users on the local network. However, if wireless access points are connected to the network, anyone in proximity to the network can connect to it. A wireless access point is equipment that connects to the modem and broadcasts a signal. It is possible for an unknown user who has a computer with a wireless access card to access an unencrypted wireless network. Once connected to that network, the user can access any resources available on that network to include other computers or shared Internet connections.

<u>PROBABLE CAUSE</u>

9.      On August 4, 2023, I was on Facebook posing as a 13-year-old female named "Stella." Vincent Alberto Barrios began communicating with Stella. Facebook operates solely on the internet. After learning Stella was only 13 years old, he continued to communicate. Eventually, Barrios asked to "fuck" Stella and also asked her to send him "nudes" of her. Stella told Barrios that he had to wear a condom and he said he would "pull out."

10.     On August 6, 2023, Barrios asked to meet Stella to engage in unlawful sex. Stella provided Barrios with a meet location, a closed business in north Rapid City. Law enforcement surveillance watched Barrios leave his Box Elder home and drive quickly in the direction of the meet location. He drove passed the exit for the meet location and took the next exit. He told the undercover that he took a wrong turn. He then proceeded around the mall and towards the meet location. He initially drove by the parking lot of the meet

10

location and pulled into a nearby parking lot.  He wrote that he would give Stella a ride when she said she was behind the closed building.  He then drove into the parking lot of the meet location and was arrested.  At the time of his arrest, he had a condom in his right front pocket.

11.    SA Shane Hardy and SA John Barnes were also communicating with Barrios and he continued speaking to both after learning both undercover personas were 14 years old.

12.    Barrios was transported to the Homeland Security Investigations (HSI) office where he was interviewed by HSI SA John Barnes and RCPD Detective Matt Almeida.   During the interview, he admitted it was him communicating with Stella and that he knew she was only 13.  Barrios claimed he did not want to have sex with Stella and that he had sex with an adult this evening, so he did not need sex.  When confronted with saying that he did not want to wear a condom and that he would "pull out" and asked how good she was at oral sex, Barrios admitted that was "messed up" of him to do.  He also admitted to communicating with the other minors.

13.    On August 7, 2023, a search warrant was granted to examine the Samsung Galaxy S22 cell phone seized from Barrios at the time of his arrest (the SUBJECT DEVICE).   I was able to use Cellebrite and extract a file system Qualcomm live and Advanced Logical data extraction.  Both extractions partly failed during the shared memory part of the extraction.  I knew the extraction I was able to obtain would not extract application data from Facebook or Snapchat.  Due to this, I manually reviewed the phone.

11

14.     The first place I reviewed was the Gallery application.   I located 11 images/ videos from August 6, 2023.   Three videos were of Barrios getting oral sex from an unknown girl.   There was a screen shot of the image of my undercover persona I sent to Barrios.   There was also an image from my undercover persona's Facebook account.   Barrios also took a screen shot of part of our conversation.

15.     On August 5, 2023, Barrios took a screen shot of my undercover persona writing that "she" was 13 years old.   I saw images from July 30 and July 31, 2023.   The images were of Y.F., a 14-year-old I am familiar with from a prior investigation.   Barrios had multiple nude images of Y.F., including one of her vagina and anus.   That photo had a Snapchat QR code over Y.F.'s face.   The QR code was for Y.F.'s Snapchat account AKshorty420.   I know this to be Y.F.'s Snapchat account.   I located additional messages between Y.F. and Barrios over text message.   In the messages, Y.F. and Barrios talked about meeting up to smoke and have sex.   It also appeared there was nude images sent but the messages were deleted out of the text thread, or they were sent over Facebook or Snapchat.   In one of the messages Barrios wrote, "I don't wanna hear that shit either. If I want a pussy pic you send it..no more bullshit".   Barrios asked to have sex with Y.F. and asked for her to perform oral sex.   It appeared Y.F. and Barrios also communicated via Facebook and Snapchat, but they talked about blocking each other.   I was unable to find those messages, so they were likely deleted or removed when they blocked each other.

16.     On August 8, 2023, I called Y.F.'s mom and asked if she knew Vincent Barrios.  She stated she did, and she has known him for the past eight years.  She stated he was a family friend.  She stated he knew her daughters, Y.F. and C.D.  She stated he knew their ages and knew Y.F. was underage.  I set up a forensic interview with Y.F. for the following day.

17.     While reviewing the chats and writing my report, on August 8, 2023, I noticed Barrios had blocked my Facebook account so I could not see him on Facebook any longer.  I contacted the other agents who chatted with him, and he had also blocked them.  I was able to see he still had a Facebook account and was not shut down by Facebook.  I could also see that there were messages marked as, "Read".  The time stamp was around 11:00 a.m. on August 8, 2023.  This also meant someone was on Barrios's account and reviewed the, "Test" and "Test Test" messages I sent to the account after Barrios's arrest.  I have learned that Barrios was released on Pretrial Release from the Pennington County Jail at approximately 9 a.m. that day.

18.     I later spoke to Y.F.'s mom, and she stated that she could see that Barrios was active on Facebook.  She messaged me throughout the night and was concerned for her and her daughter's safety due to Barrios being out and not in jail.

19.     On August 9, 2023, I observed Y.F.'s forensic interview.   She disclosed that, two weeks before, around the end of July to the beginning of August, she met up with Barrios.  Barrios drove her to his trailer in Box Elder

where they planned to smoke marijuana. This occurred at night. Prior to the meet up Y.F. confirmed Barrios asked for nude images and she sent him some.

20.    When Y.F. and Barrios arrived at his house, they went to Barrios' room. While there, Barrios started grabbing Y.F.'s buttocks and kissing her thighs while they were laying on his bed. He pulled off Y.F.'s pants and underwear. He was kissed her thighs and her vagina. Y.F. told Vincent to stop but he did not. She pushed his head away, but he kept pushing back. Barrios was also holding her legs, so they were spread apart and had them pinned to the bed. Y.F. continued to try to push him away but it did not work. As this was happening, she said that he was, "kissing" her "down there," referring to her vagina. Y.F. had her phone next to her, so she started texting friends telling them to call her so she could get away from Barrios' sexual advances. Several people called her, and Barrios got mad and he stopped kissing her vagina. Barrios then drove her home.

21.    Y.F. stated she did not think Barrios knew her age, but she stated he knew her mother. Y.F.'s mother told me that Barrios knew Y.F.'s age and that he had known her since she was in kindergarten. She also knew that Barrios was aware that Y.F. was her youngest daughter.

22.    When at his house, Y.F. did not think Barrios recorded her but that she could not be sure, and she said he asked if he could record her. There was a computer in the room that could possibly have recorded them.

14

23.     Barrios was charged via superseding indictment for his crimes against Y.F. and the undercover persona.  His case is currently set to proceed to trial on December 19, 2023.

24.     For the purpose of trial preparation, I checked to see if the phone he had on him at the time of his August 6, 2023 arrest (the SUBJECT DEVICE) was supported for a better extraction.   The forensic examination tools I use during my examinations frequently update due to advances in technology.   At the time of the first search warrant the phone was not supported by the forensic tool Graykey and I was only able to extract a limited amount of data from the device utilizing Cellebrite.  This week, I checked and determined the phone is now supported with Graykey.  With a Full File System data extraction, I will be able to extract additional data from the phone that I was unable to in August of 2023, including third party application data like Facebook and Snapchat, as well as additional data relevant to his case.

SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS INCLUDING CELL PHONES

25.     Based upon my training and experience, as well as information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips.  I also know that during a search of physical premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched;

b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

16

d.     Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

### LIMIT ON SCOPE OF SEARCH

26.    I submit that if during the search, agents find evidence of crimes not set forth in this affidavit, another agent or I will seek a separate warrant.

### CONCLUSION

27.    Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that there exists evidence of a crime, contraband, instrumentalities, and/or fruits of violations of criminal laws as specified herein, is located on the SUBJECT DEVICE, described further in

Attachment A.  I respectfully request that this Court issue a search warrant for the SUBJECT DEVICE, authorizing the seizure and search of the items described in Attachment B.

28.    I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process.  For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises.  Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

Detective Matt Almeida
Rapid City Police Department
Internet Crimes Against Children
Taskforce

SUBSCRIBED and SWORN to

_____ in my presence

__X__ by reliable electronic means

this __30__ day of November, 2023.

DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

18

5:23-mj-243

## ATTACHMENT A

### PROPERTY TO BE SEIZED AND SERACHED

One cellular phone, belonging to Vincent Alberto Barrios seized from him upon his August 6, 2023 arrest, further described as one Samsung, black in color, model SM-S901U, serial number R5CT62MG4AE (the "Subject Device"). The device was previously examined as authorized by a search warrant but the extraction was incomplete.  The device has remained in the secure custody of law enforcement since its original seizure.

5:23-mj-243

## **ATTACHMENT B**

## **ITEMS TO BE SEIZED**

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely a violation of 18 U.S.C. § 2422(b), enticement or attempted enticement of a minor using the internet:

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTERS"):
   a. evidence of who used, owned, or controlled the COMPUTERS at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
   b. evidence of software that would allow others to control the COMPUTERS, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
   c. evidence of the lack of such malicious software;
   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;
   e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;
   f. evidence of the attachment to the COMPUTERS of other storage devices or similar containers for electronic evidence;
   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTERS;
   h. evidence of the times the COMPUTERS were used;
   i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTERS;

20

      j. documentation and manuals that may be necessary to access the COMPUTERS or to conduct forensic examinations of the COMPUTERS;

      k. records of or information about Internet Protocol addresses used by the COMPUTERS;

      l. records of or information about the COMPUTERS' Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

     m. contextual information necessary to understand the evidence described in this attachment.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Child pornography and child erotica.

5. Records, information, and items relating to violations of the statutes described above including

      a. Records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

      b. Records and information relating to sexual exploitation of children, including correspondence and communications between Whisper app users.

6. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

7. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones (cell phones), tablets, certain gaming devices, server computers, and network hardware.

8. The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include but are not limited to internal and external hard drives, SD cards, storage disks (CDs and DVDs), flash memory, other magnetic or optical media and "cloud" storage by any provider.